

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00333-CR

THE STATE OF TEXAS, APPELLANT

V.

SAMMY CARL WILLIAMS, APPELLEE

On Appeal from the 106th District Court
Lynn County, Texas
Trial Court No. 14-3151, Honorable Carter T. Schildknecht, Presiding

September 22, 2015

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellee, Sammy Carl Williams, was tried on five felony counts arising out of a motor vehicle collision. The jury found appellee guilty of two counts of aggravated assault,[1] intoxication assault,[2] and two counts of failure to stop and render aid.[3] Further, the jury found that appellee used a deadly weapon in each of the offenses for

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

[2] *See id.* § 49.07(a)(1) (West 2011).

[3] *See* TEX. TRANSP. CODE ANN. § 550.021(a) (West Supp. 2014).

which they found him guilty. After hearing evidence on the issue of punishment, the jury returned sentences of ten years' confinement and a fine of $10,000 on count 1 (aggravated assault), ten years' confinement and a fine of $10,000 on count 2 (intoxication assault), ten years' confinement and a fine of $10,000 on count 3 (failure to stop and render aid), two years' confinement and a fine of $10,000 on count 4 (aggravated assault), and five years' confinement and a fine of $5,000 on count 5 (failure to stop and render aid). On each punishment verdict form, the jury found that appellee's sworn motion for community supervision was true and, on each punishment verdict form, the jury recommended that appellee be placed on community supervision. The State appeals from the judgment placing appellee on community supervision. We dismiss the State's appeal for want of jurisdiction.

## Factual and Procedural Background

The facts that underline appellee's conviction are not at issue before this Court. We will discuss only so much of the factual background as is necessary for this opinion.

All charges filed against appellee arose out of a collision between appellee's vehicle and the vehicle belonging to the Mata family. As a result of the collision, a minor who was riding in the Mata vehicle had his leg amputated and the driver of the Mata vehicle suffered broken ribs. Appellee fled the scene and was apprehended later. Initially, the State filed a single indictment against appellee alleging the six different counts.[4] After plea negotiations broke down, the State reindicted appellee in three separate indictments which alleged the same offenses as the initial single indictment.

---

[4] Prior to trial, the State dismissed a count alleging injury to a child.

2

Appellee filed a motion to consolidate all offenses for trial. The trial court granted the motion. The State filed a petition for writ of mandamus with this Court seeking to order the trial court to withdraw her order of consolidation. We denied the mandamus application. *See In re Munk,* No. 07-14-00308-CV, 2014 Tex. App. LEXIS 9085, at *5 (Tex. App.—Amarillo Aug. 15, 2014, no pet.) (mem. op.).

The matter proceeded to trial on a single indictment alleging the five counts previously outlined. After the jury had found appellee guilty of each count and the jury had heard the evidence regarding punishment, the jury advised the trial court it had reached its verdict on punishment. The jury was recalled to the courtroom, and the presiding juror advised the trial court that they had reached a verdict. The presiding juror was then asked if the verdict contained on each of the separate five verdict forms was the unanimous verdict of the jury, to which she replied, "Yes, ma'am." The trial court then read the jury's punishment verdict on each of the five counts on which appellee had been convicted. After reading the verdicts aloud, the trial court asked, "[I]s there a request to poll the jury?" Each party answered, "No, Your Honor." The trial court advised the jury that the jury had reached the end of their responsibilities but allowed the jurors, if they desired, to remain in the courtroom. Immediately thereafter, the trial court sentenced appellee in accordance with the verdicts received from the jury.

It was only after appellee had been sentenced that the State's attorney approached the bench and asked, "[I]s it too late to poll?" The trial court advised the State's attorney that he had declined to poll the jury after the verdict had been received by the trial court. The State contended that the jury was confused and that he did not believe that this was a unanimous verdict, whereupon, the trial court reminded the

3

attorney that the presiding juror had stated it was a unanimous verdict. The colloquy between the State's attorney and the trial court continued for several minutes. At the conclusion, the bailiff advised the trial court that the presiding juror had indicated that the jury wanted appellee to serve his terms of confinement and then receive probation. The trial court then stated, "There's no such thing as that." After more discussion, the State moved for a mistrial, which the trial court denied.

The State now appeals via seven issues. The State's first six issues stem from the events that followed the jury's return of the verdicts on punishment. In these issues, the State attacks the failure of the trial court to conduct a jury poll, either upon the State's request following receipt of the verdicts or *sua sponte*, that the verdict entered was not the verdict intended by the jury, that the verdict rendered by the jury could not be entered because of the deadly weapon finding, or that the manifest injustice of the verdict demands a new trial. The State's seventh issue contends that three indictments were unlawfully consolidated for trial.

For the reasons that we set forth below, we will dismiss the State's appeal for lack of jurisdiction.

Jurisdiction

As a reviewing court, we have the duty to make an initial determination of whether the Court has the jurisdiction to resolve the matter presented before it. *See State v. Roberts,* 940 S.W.2d 655, 657 (Tex. Crim. App. 1996) (en banc), *overruled on other grounds by State v. Medrano,* 67 S.W.3d 892, 901-03 (Tex. Crim. App. 2002) (en banc). The right to appeal is a right conferred and defined by statute. *See Marin v.*

4

*State,* 851 S.W.2d 275, 278 (Tex. Crim. App. 1993). This is particularly important where the appealing party, the State, has a limited right of appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West Supp. 2014) (setting forth when the State may appeal).[5]

A review of the State's first six issues leads to the conclusion that the State is contending that the sentence imposed by the trial court was improper because it did not reflect what the State contends was the true intention of the jury. Classifying the State's issues as such is important because of the limitation of the State's right of appeal as set forth in the Texas Code of Criminal Procedure. *See id.* Article 44.01 provides, as is relevant to this discussion, that "[t]he [S]tate is entitled to appeal a sentence on the ground that the sentence is illegal." Art. 44.01(b). As pointed out by the Texas Court of Criminal Appeals in *State v. Baize*, "the Court of Appeals may look behind the State's facial allegation of what it is appealing to determine whether it is in fact 'appealing a sentence and not something else.'" *State v. Baize,* 981 S.W.2d 204, 206 (Tex. Crim. App. 1998) (en banc) (per curiam) (differentiating between "assessment of punishment" and "sentence" and quoting *State v. Ross,* 953 S.W.2d 748, 750 (Tex. Crim. App. 1997) (en banc)). *Ross* directs that our jurisdiction turns on whether the State appeals a "sentence." *Ross,* 953 S.W.2d at 949. If we determine the State is appealing a "sentence," we may then address the issue of the legality of the sentence on its merits. *Id.*

In answering the questions posed by *Ross* and while performing the analysis required by *Baize*, we first look at how the term "sentence" is defined. Article 42.02

---

[5] Further reference to the Texas Code of Criminal Procedure will be by reference to "Article ____," "Art. ____," or "article ____."

5

says that a sentence is that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law. Art. 42.02. According to *Baize*, a sentence is the punishment, not the act of assessing the punishment. *Baize,* 981 S.W. at 206. In *State v. Kersh*, the Texas Court of Criminal Appeals delineated what a sentence is by explaining that the sentence "consists of the facts of the punishment itself, including the date of commencement of the sentence, its duration, and the concurrent or cumulative nature of the terms of confinement and the amount of fine, if any." *State v. Kersh,* 127 S.W.3d 775, 777 (Tex. Crim. App. 2004) (en banc).

With the foregoing guidance in mind, we turn to the issues presented by the State. Issues one through six complain about (1) the failure of the trial court to poll the jury after the verdict had been received and sentence pronounced, (2) that the written verdict was not the true intention of the jury, (3) the failure of the trial court to order the jury to deliberate further, (4) the verdict was not assented to by all twelve jurors, (5) trial court's sentence was illegal because a deadly weapon finding had been returned, and (6) the verdict was manifestly unjust. When the issues are examined in detail, the following becomes clear: the State is complaining about the process of obtaining the verdicts; specifically, it complains about the events that followed the trial court's actual receipt of the verdict.

The record is clear that the trial court received the verdict and ascertained through questioning the presiding juror that the verdict was unanimous. Both parties declined the trial court's invitation to poll the jury. Following that, the trial court sentenced appellee to the sentences returned by the jury. No one disputes that notion.

6

Further, no one disputes that the sentences handed down by the jury were legal sentences, that is to say, within the parameters for the minimum and maximum sentences set by the legislature. Only after the trial court pronounced sentence against appellee, and then proceeded to go over the terms and conditions of probation, did any issue arise. No matter how you couch the issues, at the end of the day, the State is complaining about the process of arriving at the jury verdicts on each guilty verdict that resulted in appellee being granted probation. The jury returned the verdicts that the trial court read and now the State asserts that these were not what the jury intended. As was stated in *Baize*, a challenge to the procedure leading to imposition of the sentence does not provide the State with standing to appeal pursuant to article 44.01(b). *See Baize*, 981 S.W.2d at 206. As close as the State comes to appealing the sentence is in the fifth issue when it contends that the trial court ignored the jury's verdict in granting probation and thereby sentenced the defendant to an illegal sentence. However, a review of the issue reveals that the State's issue is prefaced on the failure of the trial court to do those things complained of in issues one through four. Again, this is a complaint about the process of arriving at the verdict. *See id.* For the reasons heretofore stated, we are without jurisdiction to entertain the State's first six issues.

The State's seventh issue is directed at the trial court's granting appellee's motion to consolidate three indictments for trial. The State argues that the act of consolidation for trial the three indictments into one single indictment meant that the two consolidated indictments were dismissed. Thus, according to the State's theory, they may appeal pursuant to article 44.01(a)(1). *See* art. 44.01(a)(1). The provision in question provides as follows:

7

(a) the state is entitled to appeal an order of a court in a criminal case if the order:

(1) dismisses an indictment, information, or a complaint or any portion of an indictment, information or complaint

What the State has not provided the Court is any authority for the proposition that, for purposes of article 44.01(a)(1), an order of consolidation operates or serves to dismiss the charges contained in the indictments that were consolidated into a single indictment. Indeed, all of the authority submitted by the State goes to the question of whether a trial court abuses its discretion in ordering a consolidation of indictments for trial. This issue was addressed by this Court in a mandamus action brought by the State before the instant trial commenced. *See In re Munk*, 2014 Tex. App. LEXIS 9085, at *5. In that opinion, we found that the trial court did not abuse its discretion in granting the appellee's motion to consolidate the three indictments for trial. Further, the record reflects that appellee was called to enter a plea to each of the charges contained in the three previous indictments.[6] Finally, the judgment reflects that appellee was found guilty of each of the five charges and a jury returned a punishment verdict on each of the five charges. As a result, we find there was no dismissal of an indictment within the meaning of article 44.01(a)(1) in the order of consolidation. Accordingly, the State has not brought an appeal of the dismissal of an indictment for purposes of article 44.01(a)(1) and we are without jurisdiction to entertain the question presented by the State's seventh issue.

---

[6] The exception being the injury-to-a-child count that the State dismissed prior to trial.

Conclusion

Having determined that the State's appeal does not properly invoke the jurisdiction of the Court, we dismiss the appeal for want of jurisdiction.


Mackey K. Hancock
Justice


Publish.